## STEPHEN STANWOOD *vs.* CHARLES KIMBALL & others.

County commissioners laid an aqueduct from a spring, through the lands of several persons, to the county buildings, and thereby diverted the water which before flowed to the works of S.: At or about the time when the aqueduct was laid, a lateral pipe was inserted in it, and water thereby conveyed to said works; but it did not appear by whose order or at whose expense the pipe was thus inserted: The commissioners afterwards caused the pipe to be cut off, and S. was thereby deprived of the use of the water: S. brought an action against the commissioners, alleging, in one count, that they had diverted the water of the spring, and in another count, that they caused the pipe to be cut off: The commissioners, in their defence, gave in evidence a deed, executed after the aqueduct was laid, by S. and others, through whose land it was laid, in which deed they recited that it had been laid with their consent, and acknowledged that they had received full satisfaction for all damages occasioned to their several lands by laying it, and in which they also granted to the county the liberty of entering upon their several lands, for the purpose of repairing, or relaying, or taking up said aqueduct, whenever the county commissioners, or any authorized agents of the county, might deem it necessary; the county to pay to the owners of said lands such damages as should be thereafter occasioned by entering thereon for said purpose. *Held*, that this deed was a grant to the county of the entire use of the water of the spring; that the whole damages for such use had been received by S.; that if the pipe was inserted in the aqueduct before the deed was executed, the right to continue it was relinquished by the deed; that if the pipe was inserted after the deed was executed, it was either a trespass, or was done in pursuance of a parol license of the commissioners, which was revocable and had been revoked; and that, in either case the commissioners had a right to cut off the pipe.

TRESPASS UPON THE CASE against the county commissioners of this county. Trial before *Shaw*, C. J. whose report thereof was as follows:

The ground of the plaintiff's complaint was, that he was the owner of a small tract of land in Ipswich; that there was

a brook, rill or watercourse, which ran down a channel or gutter in the road, between hills extending up some distance; that this brook, after passing by his land, passed through two or three other closes of other proprietors, and discharged itself into Ipswich River.

The plaintiff alleged that his business was that of a wool puller and dresser of skins; that he had sunk vats and pits on his premises, and erected buildings on them, and that the use of the water was essential to the useful and profitable prosecution of his said business.

The complaint in the plaintiff's first count was, that the defendants, without right, or justifiable cause, had diverted the water of a certain spring, called Grove's Spring, situated above the plaintiff's premises, (and which constituted an important, and probably the most copious, source of the rivulet in question,) by sinking a longer, wider and deeper reservoir, at the site of said spring, and by conducting the water therefrom, by means of an aqueduct, to the jail, house of correction, and hospital for the insane, for the use of those county buildings in Ipswich.

The evidence offered by the plaintiff tended to show that the rivulet in question flowed down a gutter on one side of a way, called Hog Lane; that it was sometimes very small, but that there was seldom a time when there was not some water flowing in it; that Grove's Spring, one of the sources of this rivulet, was on the side of said way; that the surplus water of this spring ran across said way, into the gutter, and constituted a part of said rivulet.

The evidence left it a little doubtful whether the spring, which issued from an adjoining hill, was wholly within the close adjoining the way aforesaid, and now the property of the county, or was partly in that close and partly in said way. It appeared that there was a bend in the wall, (the whole of which was rather crooked,) at the place of the spring, and that a drinking place for cattle passing up and down said way was formed in the way. This place was at first formed of the section of a hollow log, bedded round and backed up with

earth, and the log was afterwards removed and a square plank box substituted, which was bedded round and backed up as the log had been.

The defendants took various grounds of defence to the case made by the plaintiff, one of which was, that the proprietors of the lands, or some of them, through which the aqueduct passes, including the plaintiff, had by deed granted to the county a right to lay and maintain the aqueduct and divert the water, so far as it flowed from Grove's Spring, and had thereby released to the county all damages occasioned to him thereby. The deed was then offered in evidence, and its execution was admitted. It bore date June 19th 1844, and is copied in the margin.*

---

\* We the subscribers, owners of land through which an aqueduct from Grove's Spring, so called, in Ipswich, to land of the county of Essex, whereon county buildings now stand, has been laid with our consent, have received in cash full satisfaction for all damages occasioned to our several lands by laying the same to this date, as may appear by our receipts bearing even date with these presents. And we do hereby grant to said county of Essex the liberty of entering upon our said several lands for the purpose of repairing, or relaying, or taking up said aqueduct, whensoever the county commissioners or any authorized agent of said county may deem it necessary ; said county or its agent or agents causing all walls or fences, which may be removed by them, to be rebuilt or reset in as good a state as before their removal, and doing the least possible injury to said lands, and paying to the owners or occupants thereof such damage as may be actually occasioned from time to time hereafter by entering upon the lands aforesaid, for the purpose aforesaid. Aaron Cogswell, jr. and Hannah his wife, subscribers hereto, acting for and in behalf of their minor son Isaac E. Burnham, as well as for themselves.

Witness our hands and seals this nineteenth day of June, A. D. 1844.

Signed, sealed and delivered }
in presence of us. }

| | |
|---|---|
| Jacob B. Tenney. | Aaron Cogswell, jr. [Seal.] |
| Abigail Staniford. | Hannah B. Cogswell. [Seal.] |
| Aaron Sweet. | Thomas Dennis. [Seal.] |
| Joseph N. Ames. | Mary Dennis. [Seal.] |
| Mary J. Hodgkins. | Isaac Stanwood. [Seal.] |
| Charles Smith. | Stephen Stanwood. [Seal.] |
| | George C. Dennis. [Seal.] |

This deed was duly acknowledged by the plaintiff, and on the back thereof was the following receipt : Ipswich, June 19th 1844. I, Stephen Stanwood, do hereby acknowledge to have received of the county of Essex the sum of twenty five dollars, for damage done to my land by entering upon the same and laying an aqueduct from Grove's Spring, so called, to the premises of said county, whereon county buildings now stand. Stephen Stanwood.

Stanwood *v.* Kimball & others.

The judge was of opinion that this deed was a conclusive and binding admission that the aqueduct had been laid by the consent of those who executed the deed, and that they had received full satisfaction for damages ; or, looking at the provisions, in the deed, for the future repair of the aqueduct, upon the terms stated, and taking the whole instrument together, it was, in legal effect, a grant to the county of the right to lay and maintain an aqueduct through their lands, for the consideration therein stated ; and that, in either case, it was a bar to this action.   The judge was also of opinion that the right granted was not merely to enter upon their lands, from time to time, to lay, repair and replace aqueduct pipes, but to lay and maintain an aqueduct through which water should flow from Grove's Spring, and was an authority, so far as the plaintiff could give it, to take and divert the water of that spring, and was also a release of all damages occasioned by the diverting or diminishing of the stream or watercourse coming to the plaintiff's land, so far as the same would have flowed from that spring.

The plaintiff then proposed to put his case upon another ground, as stated in his second count, which alleged that, when the county aqueduct was laid down, a pipe was inserted therein, laterally, on the plaintiff's premises, by which water was conveyed to his vats and works ; that it was of great use and benefit to him in his business ; that he had a right to have it continued there ; but that the defendants afterwards unlawfully, and without right, caused said pipe to be cut off, by means whereof he was deprived of the use of the water through said pipe.

It appeared that, when the county aqueduct was laid down, this lateral pipe was inserted, but by whose order, or at whose expense, did not distinctly appear ; and that the water therefrom entered the plaintiff's works.

It was contended for the plaintiff, that from the fact that the lateral pipe was thus inserted for his use, a tacit or implied grant of the right so to enter it, and afterwards to continue it, was to be inferred.   The defendants contended that such

insertion of the pipe was permissive, experimental and pro-visional only; that they were willing the plaintiff should have such use of the water, if it could be had without di-minishing the quantity required for the uses for which the aqueduct was laid; that no permanent right was thereby given to the plaintiff; that they retained their entire power and control over it; that, after some months, finding the water insufficient for the purposes of the aqueduct, they gave notice to the plaintiff of their intention to cut off the lateral pipe leading to his works, and, pursuant to such notice, caused it to be cut off — the plaintiff protesting against their right to do so, and forbidding the persons employed to do it.

The judge was of opinion that as the aqueduct was laid at the expense and for the benefit of the county, from the county land to the county buildings, the fee was in them; that as the plaintiff, in his deed to the county, had made no excep-tion or reservation of the stream, or any part of it, the whole right to it, and to the use of the water, vested in the county; and that the fact that the side pipe was inserted, when the aqueduct was laid, was not one, independent of other facts, from which a right to continue it, and have the perpetual use of it, could be implied or inferred.

Supposing the whole right to the use of the water to be vested in the county, the judge was of opinion that it was incumbent on the plaintiff to establish his right to the use of part of it, by grant or prescription; that no grant was shown or could be presumed; that the use, whether adverse or per-missive, having continued less than two years, furnished no proof of prescription; and that the action could not be main-tained.    Whereupon the plaintiff became nonsuit, subject to the opinion of the whole court.

*Perkins & Haskell,* for the plaintiff.    The deed, executed by the plaintiff and others, did not release the damages which he now sues for.    It does not appear from the deed that either party had suffered or released any damages caused by the diversion of the water.    And the release is to be applied only to the damages which were common to all the releasors

*Rich* v. *Lord*, 18 Pick. 322. It is now attempted to apply the release to one of the parties, as to a matter in which he alone has an interest, and a matter which is not mentioned in the recital prefixed to the release. Besides ; only past damages are released by the deed, and not damages for the obstruction of the plaintiff's water rights, which the defendants have since caused.

As the specific matter referred to in the release is alone affected by it, the actual condition of things, at the time it was executed, should be taken into consideration, in construing its terms, and giving them their legal effect. *Dyer* v. *Sanford*, 9 Met. 395. See also *Choate* v. *Burnham*, 7 Pick. 278. *Waterman* v. *Johnson*, 13 Pick. 265. *Doe* v. *Burt*, 1 T. R. 701. *Williston* v. *Morse*, and *Goddard* v. *Dakin*, 10 Met. 27, ·99.

The amount of the consideration, which the plaintiff received, is wholly inadequate to compensate him for the obstruction ; and the terms of a deed will not, in such case, be extended by construction. *Hatch* v. *Dwight*, 17 Mass. 298.

But if the construction of the deed must be against the plaintiff, yet as the pipe, which the defendants have cut off, was in the aqueduct log, when the deed was given, and was afterwards continued there for the plaintiff's use, he must have understood that he was to have the use continued, and the defendants must have known that he so understood the matter. They are therefore estopped to deny his right to such continued use. 1 Story on Eq. § 384. *Pickard* v. *Sears*, 6 Adolph. & Ellis, 469. *Tufts* v. *Hayes*, 5 N. Hamp. 452. No writing was necessary, in order to give the plaintiff the use of the water. *Shattuck* v. *Gragg*, 23 Pick. 88. *Davenport* v. *Mason*, 15 Mass. 92. The defendants' permission may be regarded as an irrevocable license. *Ameriscoggin Bridge* v. *Bragg*, 11 N. Hamp. 102. *Clement* v. *Durgin*, 5 Greenl. 9. *Woodbury* v. *Parshley*, 7 N. Hamp. 237. *Ricker* v. *Kelly*, 1 Greenl. 117.

*O. P. Lord*, for the defendants. The subject matter of the deed throws light on its terms. That subject matter was the

conveyance of water from Grove's Spring to the county build-
ings. The manner of conveying the water was a minor
circumstance. The water was running in the aqueduct logs
when the deed was executed, and therefore the damages for
taking the water must have been included in the sum paid to
the plaintiff. See *Hathorn* v. *Stinson*, 1 Fairf. 224, and cases
there cited. *Wetmore* v. *White*, 2 Caines Cas. in Er. 87.
*Jackson* v. *Vermilyea*, 6 Cow. 677. *Provost* v. *Calder*, 2
Wend. 517. *Pattison* v. *Hull*, 9 Cow. 747. *Ashley* v. *Pease*,
and *Dryden* v. *Jepherson*, 18 Pick. 268, 385.

As to contemporaneous exposition of the deed, by the
parties, the fact is, that the defendants used the water, from
the beginning, as they now use it. That exposition is there-
fore in their favor, and against the plaintiff.

The defendants are not liable for cutting off the plaintiff's
pipe. The plaintiff could not, by parol, reserve the right to
continue to use it, and to take away the water from the county
buildings. Such a reservation can be made only by deed.
*Burr* v. *Mills*, 21 Wend. 290. If the pipe was used by license,
that license was revocable ; no consideration for it appearing.

SHAW, C. J. The gist of the plaintiff's complaint is, that
he was the owner of a small parcel of land in Ipswich, along
which, between his land and that of a conterminous proprietor,
ran a small brook or stream of water ; that the plaintiff had,
on his own land, a shop or building, with vats and pits under
it, used for washing wool and dressing skins ; that he had
formerly, and before the laying of the aqueduct hereafter men-
tioned, turned a part of said brook, as occasion required, so as
to fill his vats and supply him with water, returning it again
into the stream ; that in or prior to the year 1844, the officers
of the county laid an aqueduct, for the use of the county jail,
house of correction, and hospital for the insane, with the
consent of the plaintiff and other land owners, as expressed
in their deed hereafter mentioned ; that at or about the time
said aqueduct was laid, a pipe, entering the same and con-
ducting water to the plaintiff's works, was laid down, but by
whose order, or under what authority, did not appear ; that

after a trial of one or two years, the county commissioners, finding that the supply of water for the county buildings was insufficient, after notice to the plaintiff, ordered the said pipe to be cut off, and it was cut off accordingly, to the great damage of the plaintiff.

The defendants relied upon a deed, executed by the plaintiff and others, on the 19th of June 1844, and which accompanies the report of the trial. The execution of this deed being admitted, the judge who tried the cause was of opinion, and proposed to instruct the jury, that this deed operated as a grant to the county of the entire use of the water; that the defendants, as county officers, had a right, if in their judgment the use of the county buildings required it, to cut off the plaintiff's pipe; and that the action could not be maintained. Whereupon the plaintiff became nonsuit, subject to the opinion of the whole court.

It has been contended for the plaintiff, that the construction put upon this deed, at the trial, is not the correct one; that the effect of the deed on the part of the plaintiff was to assent to the past acts of the county officers, in entering on his land and laying down 'the aqueduct, and an acknowledgment of the receipt of damages therefor, and the grant of a future right to enter his land, for the purpose of repairing and replacing the aqueduct pipes, doing as little damage as possible. But we cannot put this restricted construction upon this deed. The purpose is expressed by the term "aqueduct." An aqueduct, from a spring of water to certain buildings, can be applied to no other useful purpose, than that of conveying water to them. A right to the use of water is incident to the ownership of land, and a grant of a perpetual special use of land to convey water, carries with it a right to the use of the water to be conveyed. The grant of a right to lay and maintain aqueduct pipes would be useless and illusory without it. If the plaintiff might divert part of the water, why not the whole? He could not, as formerly, after using it, return it into the stream again. All that was withdrawn was diverted absolutely from the aqueduct. Every grant of a right or

45 *

privilege carries with it, by necessary implication, every thing necessary to its enjoyment, which the grantor has it in his power to grant. Looking at this deed, in reference to the subject matter, and the circumstances under which it was given, and with reference to its terms, it appears, either a perpetual grant of the use of the plaintiff's land, or rather it recites a previous parol grant, and by this deed ratifies and confirms it, for the purpose of conveying the water in question to the county buildings, and as incident thereto the use of the water; and he could not afterwards divert it.

But it has been further contended, that as the plaintiff's pipe was in fact inserted, at or about the time the aqueduct was laid and the deed given, it must be presumed that the plaintiff intended to reserve that right, and that the county officers acquiesced in it. But it is difficult to maintain this position. There can be no such right by *reservation*, whatever may have been the intent and expectation of the plaintiff, for there is none made in the deed, and it is not competent to prove it by parol evidence; nor by *grant*, for none is shown or pretended; nor by *prescription*, for it was used but a very short time. If this pipe was inserted before the deed, the right to retain it, there being no reservation in the deed, was relinquished by the deed, if we are right in construing it a grant of the use of the water. If it was inserted after the grant, it was either a trespass, or done in pursuance of a parol license, revocable, and afterwards revoked; and in either case the plaintiff can found no rightful claim on that ground. It would be difficult to find any authority, in county commissioners, to give any parol license or permission which would bind the county.

It is possible that the plaintiff embraced more in his deed than he intended to do; but we can infer his intention only from his deed, expounded according to the rules of law. It was wholly matter of contract, and it was competent to him to grant or reserve as much of his right to the land and water as he thought expedient; but, to the extent to which his deed goes, he has granted away his rights, and that must be deemed conclusive. *Nonsuit confirmed.*